FILED

2016 Sep-08  PM 03:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DEMETRIUS D. CALDWELL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.:  2:15-cv-01923-JHE |
| | ) | |
| REDSTONE FEDERAL CREDIT UNION, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

On October 29, 2015, Plaintiffs Demetrius and Sabrina Caldwell initiated this action on behalf of themselves and a purported class against Defendants Redstone Federal Credit Union ("Redstone") and the Law Office of C. Howard Grisham ("Grisham"), alleging a bankruptcy count of contempt for discharge-injunction violations,[2] a count for violations of the Fair Debt Collection Practices Act ("FDCPA"), a count for declaratory and injunctive relief, a count for state-law unjust enrichment, and a count for attorney's fees.  (Doc. 1).  On November 23, 2015, Defendants moved to dismiss the Caldwells' claims.  (Docs. 7 & 10).  On January 20, 2016, the Caldwells responded in opposition, (docs. 18 & 19), and Defendants replied on January 27, 2016, (docs. 22 & 23).  The motion is fully briefed and ripe for review.  For the reasons stated more fully below, the motion to dismiss is **GRANTED IN PART and DENIED IN PART**.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 15).

[2] On April 26, 2016, because of the unusual circumstances of this case, Chief Judge Karon Bowdre, acting on behalf of the Court, designated the undersigned magistrate judge to exercise authority over the bankruptcy matters arising herein, including the issue of whether to withdraw the reference to the Bankruptcy Court.  (Doc. 25).

## I. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient.  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557, 127 S. Ct. 1955).  Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citations and internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679,

129 S. Ct. at 1950.

The court accepts all factual allegations as true on a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950.

## II. Background[3]

Before filing bankruptcy, the Caldwells owed money on a defaulted consumer credit card issued by Redstone.  (Doc. 1 at 2-3).  On October 16, 2005, the Caldwells filed a chapter 7 bankruptcy case in the Northern District of Alabama, Southern Division, in which Redstone was listed as an unsecured creditor.  (*Id.* at 3).  *See also In re Caldwell*, No. 05-13100-TBB7.  The Caldwells received a discharge on January 25, 2006.  (Doc. 1 at 3).  After the discharge, Redstone and Grisham attempted to collect the discharged debt.  (*Id.*).

## III. Analysis

Defendants have moved to dismiss all of the Caldwells' claims either for failure to state a claim or as preempted or precluded by statute.  The Caldwells contend they have properly alleged valid claims in all five of their counts.  Because Count V for attorney's fees has engendered a dispute of procedure instead of substance, the analysis will begin by briefly addressing that dispute.  Then, because the Caldwell's argument in favor of keeping Count I for contempt of the bankruptcy discharge injunction in this Court is in large part premised on the continued viability of their non-bankruptcy claims in Counts II-IV, the remaining analysis will

---

[3] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  In other words, these "facts" are taken directly from the complaint.

address those claims before proceeding to the claim for contempt of the discharge injunction.

### A. Count V – Attorney's Fees

Defendants' argument that there is no independent cause of action for attorney's fees is not disputed, and the Caldwells contend they asserted them in a separate count out of "an abundance of caution" because they must be separately pled.  (Doc. 18 at 14).  Although they acknowledge the requirement to plead attorney's fees as a separate claim has been removed from the rule, the Caldwells rely on the Advisory Committee Notes to the 2014 Amendments to FED. R. BANKR. P. 7008 (which, with some bankruptcy-specific additions, incorporates Rule 8's general pleading requirements into the bankruptcy adversary-proceeding rules) to conclude fees must still be pled separately in the complaint "if the fees are an element of damages."  (Doc. 18 at 14).

This appears to conflate the requirement to plead fees as an element of a claim and the requirement to plead them as a separate claim under former Rule 7008(b).[4]  The latter was removed from Rule 7008 because, "differ[ing] from the practice under the Federal Rules of Civil Procedure, [it] had the potential to serve as a trap for the unwary."  FED. R. BANKR. P. 7008, *Advisory Committee Notes to the 2014 Amendments*.  However, the Advisory Committee Notes acknowledge that, "[w]hen fees are an element of damages . . . , the general pleading requirements of this rule still apply."  *Id.*  It is unlikely the committee would remove a portion of the rule because it was determined to be confusing—then, in a more confusing fashion, reincorporate that rule in a specific situation that is only referenced in the notes to the amendment and not in the rule itself.

---

[4] Before subsection (b) was deleted in 2014, it read:  "A request for an award of attorney's fees shall be pleaded as a claim in a complaint, cross-claim, third-party complaint, answer, or reply as may be appropriate."  Fed. R. Bankr. P. 7008(b) (1987).

Instead, since December 1, 2014, attorney's fees are governed by Rule 7054(b)(2) of the Bankruptcy Rules. *See Soares v. Lorono*, No. 12-CV-05979-WHO, 2015 WL 151705, at *21 (N.D. Cal. Jan. 12, 2015). That rule incorporates most of Rule 54(d)(2) into the Bankruptcy Rules. FED. R. BANKR. P. 7054(b)(2) (incorporating FED. R. CIV. P. 54(d)(2) (except subsection (D)) into the rules for adversary proceedings); FED. R. BANKR. P. 9014(c) (incorporating FED. R. BANKR. P. 7054 into the rules for contested matters). Under those rules, "[a] claim for attorney's fees and related nontaxable expenses must be made by motion *unless the substantive law requires those fees to be proved at trial as an element of damages*." FED. R. CIV. P. 54(d)(2)(A) (emphasis added). Rule 7008's Advisory Committee Note is merely a reminder that, although attorney's fees no longer have to be separately pled in bankruptcy, they must still be pled to the extent they would otherwise be required as facts supporting an element of another claim to be proven. *See RBC Bank (USA) v. Glass*, 773 F. Supp. 2d 1245, 1247 (N.D. Ala. 2011) (discussing, in the context of Rule 54, the differences between "post-judgment prevailing party fees, and fees owed as an integral part of a contractual obligation"); FED. R. BANKR. P. 7008, *Advisory Committee Notes to the 2014 Amendments* (noting the requirement to state attorney's fees as a claim "differed from the practice under the Federal Rules of Civil Procedure").

Regardless, it is undisputed the Caldwells are not seeking to raise an "independent cause of action" for attorney's fees. (*See* doc. 18 at 14) (stating a separate count was brought only "out of an abundance of caution" regarding the procedural issue). Moreover, stating attorney's fees as a separate count does not provide the Caldwells any substantive benefit they would not have had from simply alleging attorney's fees under the claims supporting them. In any event, Defendants do not argue this is a basis to dismiss the request for attorney's fees but instead assert they should be incorporated into the other counts and fail on the merits of those claims. (Doc. 8 at 9; doc. 11

at 12-13; doc. 22 at 9-10; doc. 23 at 9).[5]   Accordingly, the Court will spill no more ink on this issue, and Defendants' subsequent arguments that Count V should be dismissed because the other claims are due to be dismissed, (doc. 22 at 10; doc. 23 at 9), will necessarily be resolved by the discussions of those counts below.

### B. Count II – FDCPA

The Caldwells' second count asserts claims for post-discharge violations of the FDCPA and is alleged solely against Defendant Grisham.  (Doc. 1 at 4).  Grisham argues FDCPA claims do not exist in this context because the remedy for bankruptcy violations is under the Bankruptcy Code, not the FDCPA.  (Doc. 11 at 8-9) (citing *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002)).  In response, the Caldwells assert the majority of other courts, including several circuit courts, have rejected the reasoning in *Walls* and argue this Court should adopt the reasoning of those courts.  (Doc. 19 at 2-11).  Grisham's reply does not address these other cases but merely relies on *Walls* as "instructive."  (Doc. 22 at 5).

The Caldwells have the better argument here.  Although *Walls* was the first case to address the issue, its reasoning has been criticized.  *See Simon v. FIA Card Servs.*, N.A., 732 F.3d 259, 275 (3d Cir. 2013) ("[A]s the Seventh Circuit correctly noted, the Ninth Circuit's reliance on a precedent involving federal statutory preemption of a state-law claim to decide whether a federal statute precludes a federal-law claim is misplaced.") (citing *Randolph v. IMBS, Inc.*, 368 F.3d 726, 733 (7th Cir. 2004)).  The *Walls* court held the Bankruptcy Code is an exclusive remedy even against other federal laws, relying on one case addressing preemption of state law and another case addressing the scope of the Consumer Credit Protection Act's application to the trustee's actions taken under the Bankruptcy Code.  *See* 276 F.3d at 510 (citing

---

[5] The contempt and FDCPA counts already mention "legal fees" in their relief clauses. (Doc. 1 at 4 & 6).

*MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir. 1996), and *Kokoszka v. Belford*, 417 U.S. 642, 651 (1974)).  Neither of those cases—nor even the *Walls* court directly—addressed the preclusion doctrine.

The preclusion doctrine concerns "the alleged preclusion of a cause of action under one federal statute by the provisions of another federal statute" and "is not governed by the Court's complex categorization of the types of pre-emption [of state law by federal law]."  *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2236 (2014).  Nor does the state-federal balance frame the inquiry.  *Id.*  The preemption doctrine's "principles are instructive insofar as they are designed to assess the interaction of laws that bear on the same subject."  *Id.*

The *Walls* court stated the Bankruptcy Code precludes the operation of other statutes within its ambit because allowing other federal actions would require "bankruptcy-laden determinations" and "circumvent the remedial scheme of the Code under which Congress struck a balance between the interests of debtors and creditors by permitting (and limiting) debtors' remedies for violating the discharge injunction to contempt."  276 F.3d at 510.  For this latter proposition, the court quoted *MSR Exploration*'s conclusion that the complexity and comprehensiveness of the Code "demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike."  *Id.* (quoting *MSR Exploration*, 74 F.3d at 914).  While that is true for state law that attempts to regulate in the same area as the Bankruptcy Code, Congress is presumed to know it legislates against the background of its own prior legislation.  *See Kokoszka*, 417 U.S. at 650 ("The drafters of the statute were well aware that the provisions and the purposes of the Bankruptcy Act and the new legislation would have to coexist.").  "When two statutes complement each other, it would show disregard for the congressional design to

7

hold that Congress nonetheless intended one federal statute to preclude the operation of the other." *POM Wonderful LLC*, 134 S. Ct. at 2238 (citing *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 144 (2001) ("[W]e can plainly regard each statute as effective because of its different requirements and protections")).

Similarly, the *Walls* court expanded the language of *Kokoszka* beyond its holding, stating that, like the Consumer Credit Protection Act addressed in *Kokoszka*, "the FDCPA's purpose is to avoid bankruptcy" so "if bankruptcy nevertheless occurs, the debtor's protection and remedy remain under the Bankruptcy Code." 276 F.3d at 510 (citing *Kokoszka*, 417 U.S. at 651). However, in *Kokoszka*, the Supreme Court was addressing not whether the Consumer Credit Protection Act complemented the Bankruptcy Code but whether Congress intended it to prevent the trustee from taking custody of 75% of a tax refund that would have otherwise been part of the estate. 417 U.S. at 650. The Court held the Consumer Protection Act was intended to prevent bankruptcy, not substantially alter the internal workings of the subsequently enacted Bankruptcy Code. *Id.* at 651. The *Walls* court's holding is broader than the cases upon which it stands, has been subsequently criticized, and is otherwise unpersuasive on the preclusion issue.

Moreover, although the *Walls* case was not specifically mentioned, the Eleventh Circuit recently held the Bankruptcy Code does not generally preclude the application of the FDCPA because the principles of the preclusion doctrine apply only where there is "irreconcilable conflict" between the provisions. *See Johnson v. Midland Funding, LLC*, No. 15-11240, 2016 WL 2996372, at *5 (11th Cir. May 24, 2016). Specifically, it found "[t]he FDCPA and the Code are not in irreconcilable conflict" because they "differ in their scopes, goals, and coverage, and can be construed together in a way that allows them to coexist." *Id.* "The FDCPA easily lies over the top of the Code's regime, so as to provide an additional layer of protection against a

particular kind of creditor," kicking in "only when the creditor is a debt collector" and his behavior is "unconscionable" or "deceptive." *Id.* (citing 15 U.S.C. §§ 1692a(6), 1692e, 1692f). This directly repudiates the general preclusion holding in *Walls*, and Defendant Grisham, against whom the FDCPA claim is alleged, acknowledges as much. (Doc. 29 at 1). Therefore, Count II of the Caldwells' complaint is not due to be dismissed on this ground.

### C. Count III – Declaratory and Injunctive Relief

Defendants contend the Caldwells' declaratory and injunctive relief claims are due to be dismissed as redundant of their other claims. (Doc. 8 at 6-7; doc. 9 at 10-11). The Caldwells never really respond to this argument, mentioning their declaratory judgment claims only as support of their contention their action must be brought as a complaint instead of a motion in bankruptcy court. (Doc. 18 at 9 & 13). Regardless, Defendants are correct the Caldwells' declaratory and injunctive relief claims are redundant of their other claims and do not allege "any real and immediate controversy apart from what is already alleged in" their other counts. *See Strubel v. Hartford Ins. Co. of The Midwest*, No. 809CV01858T17TBM, 2010 WL 745616, at *3 (M.D. Fla. Feb. 26, 2010).

Count III seeks declaratory relief on the following grounds: (1) "Defendants cannot collect or attempt to collect discharged debts"; (2) "Defendants' conduct violated the Bankruptcy Code"; (3) "Defendant Grisham's conduct violated the [FDCPA]"; (4) "Defendants' conduct as alleged herein was willful and/or intentional"; and (5) "Defendants are in contempt." (Doc. 1 at 6-7). It then seeks to have Defendants enjoined "from collecting or attempting to collect discharged debt." (*Id.* at 7).

The requests for the Court to declare Defendants cannot collect or attempt to collect discharged debts and to enjoin them from doing so is redundant of the original discharge order,

which explicitly incorporates 11 U.S.C. § 727 and, by necessary extension, 11 U.S.C. § 524(a) (describing the effect of § 727 as an injunction against collection of discharged debts).  *In re Caldwell*, No. 05-13100-TBB7, doc. 23.   The injunction from collecting discharged debts already exists, and enforcement of it is through the Caldwells' already existing contempt claim. *See Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 966 (11th Cir. 2012).  They cannot obtain a successive injunction because it "would be superfluous, adding no judicial action and providing no additional relief."  *Id.* (quoting *Barrientos v. Wells Fargo Bank, N.A.,* 633 F.3d 1186, 1190 (9th Cir. 2011)).   Similarly, the remaining requests for the Court to declare that Defendants' conduct violated the Bankruptcy Code and the FDCPA, that that conduct was willful, and that they are in contempt are only real and immediate controversies to the extent they are relevant to the contempt and FDCPA claims in Counts I and II.   As a result, they are redundant of those claims.

As the Caldwells do not appear to have a claim for declaratory and injunctive relief that is separate from their other claims or the already existing bankruptcy discharge, Count III is due to be dismissed.

### D. Count IV – Unjust Enrichment

The Caldwells' fourth count asserts a state-law claim in equity for unjust enrichment. (Doc. 1 at 7).  Defendants contend this claim is preempted by the Bankruptcy Code.  (Doc. 8 at 7-9; doc. 11 at 11-12).  The Caldwells respond that state law is only preempted "to the extent of any conflict with a federal statute" and an unjust enrichment claim does not conflict with the discharge injunction.  (Doc. 19 at 11-14).  Defendants' replies state the Caldwells' focus on conflict preemption is misplaced because the Bankruptcy Code's preemption of unjust enrichment is based on its preemption of the entire field.  (Doc. 22 at 7-9; doc. 23 at 7-8).  The

Caldwells also raise the issue again in the supplemental brief on new authority, asserting the Eleventh Circuit's holding in *Johnson v. Midland Funding* is dispositive of the issue because, like the FDCPA, a state-law unjust enrichment claim supplements instead of conflicts with the Bankruptcy Code and can, therefore, coexist with it.  (Doc. 26-1).  In response, Defendants point to the fact the *Johnson* case addressed a preclusion issue and not a preemption issue.  (Doc. 28 at 4-6; doc. 29 at 5-6).

Federal preemption of state law occurs (1) where Congress has expressly intended it; (2) where the federal scheme is "so pervasive as to make reasonable the inference that Congress left no room to supplement it" and "the federal system will be assumed to preclude enforcement of state laws on the same subject"; (3) or where there is an actual conflict between state and federal law so that (a) "compliance with both federal and state regulations is a physical impossibility" or (b) "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203-04 (1983).

First, regarding *Johnson*, although the principles of direct statutory conflict are relevant to both the preclusion analysis and conflict preemption analysis, *cf. POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2236 (2014) (noting the preemption doctrine's "principles are instructive insofar as they are designed to assess the interaction of laws that bear on the same subject"), the *Johnson* court did not address whether the FDCPA was an obstacle to the purposes of Congress because the rationale behind the preclusion analysis assumes the purpose of Congress is for the statutes to work together unless they physically cannot.  Federal law, therefore, may overlap absent a "positive repugnancy"; however, state laws may still be

preempted if it was not the intent of Congress for state laws to supplement the federal scheme.[6]

The Bankruptcy Code has long been considered a federal statutory scheme that is so pervasive as to evidence a Congressional intent to fully occupy the space without state law supplementation.  *See Int'l Shoe Co. v. Pinkus*, 278 U.S. 261, 265 (1929) ("States may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations."); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 447 (1st Cir. 2000) (finding the Bankruptcy Code's statutory remedy for disgorgement of unjust profits preempted the alternative state court remedy for unjust enrichment because it was "inevitably in conflict with Congress's plan that federal courts enforce § 524 through § 105"); *Pereira v. First N. Am. Nat. Bank*, 223 B.R. 28, 31 (N.D. Ga. 1998) ("'The Bankruptcy Code provides a comprehensive scheme reflecting a "balance, completeness and structural integrity that suggests remedial exclusivity."'") (quoting *Brandt v. Swisstronics, Inc.* (*In re Shape*), 135 B.R. 707, 708 (Bankr. D. Me. 1992) (quoting *Periera v. Chapman,* 92 B.R. 903, 908 (C.D. Cal. 1988))).

The Caldwells' unjust enrichment claim is preempted because it seeks the exact same relief to which they are entitled under their contempt claim.  *See Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1557 (11th Cir. 1996) ("The purpose of civil contempt sanctions is to (1) *compensate the complainant for losses and expenses it incurred because of the contemptuous act*, and (2)

---

[6] The Caldwells also cite *Bacelli v. MFP, Inc.*, 729 F. Supp. 2d 1328 (M.D. Fla. 2010), for the proposition a debtor can pursue claims under the Bankruptcy Code and another statute where the statute "work in concert with each other."  (Doc. 19 at 13).  However, as with *Johnson*, the cited portion of the *Bacelli* case was addressing the Bankruptcy Code's potential preclusion of the FDCPA, another federal statute.  *See* 729 F. Supp. 2d at 1336.  The *Bacelli* court explicitly did not address whether the Bankruptcy Code preempted the state law at issue in that case.  *See id.* at 1338.  A subsequent line of cases in that court have begun to conflate the two analyses with regard to Florida's Consumer Collections Practices Act based on its similarity to the FDCPA but no such analysis would be persuasive here.  *See Hernandez v. Dyck-O'Neal, Inc.*, No. 3:14-CV-1124-J-32JBT, 2015 WL 2094263, at *4 n.6 (M.D. Fla. May 5, 2015) (drawing from Bankruptcy/FDCPA preclusion cases because the preclusion/preemption analysis is "similar" and so are the FDCPA and the FCCPA).

coerce the contemnor into complying with the court order.") (emphasis added); *Pereira*, 223 B.R. at 31-32 ("Congress clearly intended violations of the Bankruptcy Code provisions relating to the automatic stay and post-discharge injunction to be addressed in the bankruptcy court rather than in state law actions for an accounting or for unjust enrichment.").

The Caldwells' attempt to re-characterize their unjust enrichment claim as one stemming not from whether Defendants attempted to collect a debt but "from *how* Defendants collected the debt, *i.e.*, reviving the judgment and execution of their property," (doc. 19 at 14), is unpersuasive. It appears to be an attempt to shoehorn this claim into the language of *In re Johnston*, No. 05-6288, 2007 WL 1166017 (Bankr. N.D.W. Va. Apr. 12, 2007). However, in that case, the state statute really did deal with something outside the Bankruptcy Code, *i.e.*, the Bankruptcy Code prohibited attempted collection of a debt and the state law prohibited direct contact with a debtor who was known to be represented by counsel. *Id.* at *3. Those laws did not address the same issue. They "overlapped" only to the extent they happened to apply to the same person, and the *Johnston* court acknowledged it was a bridge too far to assert the Bankruptcy Code preempted the state law because the debtor would not have had counsel except for the bankruptcy, *see id.* at *4. That is not the case here. An unjust enrichment claim has nothing to do with "reviving the judgment and execution of [the Caldwells'] property"; it merely "permit[s] the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." *Koch Foods of Alabama, LLC v. Gen. Elec. Capital Corp.*, 303 F. App'x 841, 846 (11th Cir. 2008) (quoting *Avis Rent A Car Sys., Inc. v. Heilman,* 876 So. 2d 1111, 1123 (Ala. 2003)). The alleged unjust enrichment here occurred because the discharge injunction invalidated certain debts, *see* 11 U.S.C. § 524, and Defendants then "collect[ed] discharged debts," (doc. 1 at 7). Upon proving such a claim, the Caldwells would be entitled to restitution.

13

*See Heilman*, 876 So. 2d at 1123.  The Caldwells' contempt claim is based on the allegations Defendants "have . . . collected a discharged debt" and the Caldwells are, therefore, entitled to compensatory damages.  (Doc. 1 at 4).  A contempt claim alleging the collection of a discharged debt wholly encompasses an unjust enrichment claim for collecting a discharged debt. Therefore, the Bankruptcy Code's complete remedial scheme preempts such a claim.

### E. Count I – Contempt of the Bankruptcy Discharge Injunction

Defendants contend this claim should be dismissed because there is no private right of action for the violation of a discharge injunction so the proper way to address such violations is through contempt proceedings in the bankruptcy court.  (Doc. 8 at 3-6; doc. 11 at 4-7).  The Caldwells argue they do not seek to raise a private right of action under 11 U.S.C. § 524 but a "contempt proceeding pursuant to [11 U.S.C.] § 105(a)."  (Doc. 18 at 3-4).  Further, they argue, the district court has exclusive jurisdiction over bankruptcy cases, which may be referred to the bankruptcy court, but the referral must be withdrawn when non-bankruptcy claims are included, such as FDCPA claims.  (*Id.* at 5-8).  They also contend it is in the interest of judicial economy to withdraw the reference instead of bifurcating the contempt claims from the FDCPA claims, which all arise from the same nucleus of operative fact.  (*Id.* at 8).  Lastly, the Caldwells contend they had to bring their contempt claim as a separate lawsuit because (1) courts routinely hear contempt actions as adversary proceedings, (2) their other claims could not be brought by motion, and (3) they seek class certification.  Defendants' reply characterizes the Caldwells argument as a continued assertion of a separate private cause of action for contempt and contends that, because no such cause of action exists, the claim must be dismissed regardless of whether the district court could have jurisdiction over such a claim.  (Doc. 22 at 2-3; doc. 23 at 1-3).

Although the Caldwells attempt to tie together a lot of arguments in support of bringing their contempt claim in this Court, their underlying contention is that bringing their contempt claim in this Court, alongside their FDCPA claim based on the same facts, is in the interest of judicial economy and the parties' interests in preventing unnecessary costs and delay. They did not want to split the claims into a motion in the bankruptcy court and a suit in the district court when the facts are the same, and they were reluctant to file the non-bankruptcy claims in the bankruptcy court because, they assert, those post-discharge claims do not affect the bankruptcy estate and would likely be dismissed as not being within the court's jurisdiction. (Doc. 18 at 7-8). The remaining arguments just try to prove they are allowed to do (jurisdictionally and procedurally) what they otherwise want to do. In doing so, they have created a Gordian knot of jurisdictional and procedural issues for this Court to cut through.

### 1. Jurisdictional Issues

First, there is the question of whether a contempt claim may be raised in a separate suit than the original bankruptcy case. Defendants consistently characterize this question as whether there is a private cause of action for contempt of the discharge injunction upon which a separate suit can be based and conclude that, because there is not, such a claim may not be raised in a separate suit. (Doc. 8 at 3-6; doc. 11 at 4-7; doc. 22 at 2-3; doc. 23 at 1-3). Defendants are correct in stating there is no private right of action for contempt of the discharge injunction. Although the Eleventh Circuit has not spoken directly on the issue, it has held that no independent contempt cause of action exists at common law, *see Blalock v. United States*, 844 F.2d 1546, 1550 (11th Cir. 1988) (holding that no independent contempt cause of action exists but, in criminal cases, Rule 6(e)(2), FED. R. CRIM. P., creates a cause of action for injunctive relief that can be enforced with the contempt power), and has indicated an inclination to follow

15

the majority of other circuits holding no private right of action exists under § 524 or § 105(a) of the Bankruptcy Code, *see In re McLean*, 794 F.3d 1313, 1319 (11th Cir. 2015) (citing *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 509 (9th Cir. 2002), for this proposition (despite ultimately avoiding the question) when noting the court's concern the bankruptcy court had acted beyond its jurisdiction by addressing contempt of a discharge injunction under a different case number); *id.* at 1326 (differentiating between adversary proceedings, which are generally "viewed as stand-alone lawsuit," and contested matters, under which motions for an order of contempt fall) (citing FED. R. BANKR. P. 9014); *see also In re Joubert*, 411 F.3d 452, 457 (3d Cir. 2005) (§ 105(a) does not create a private cause of action); *Walls*, 276 F.3d at 509 (neither § 105(a) nor § 524 create a private right of action); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000) (same).

However, this does not answer the question of whether the contempt proceeding must be raised in the original bankruptcy case. In fact, recent Eleventh Circuit precedent indicates that it does not—jurisdictionally or procedurally. In *McLean*, the court addressed whether a bankruptcy court exceeded its jurisdiction in enforcing, through contempt proceedings, a discharge injunction issued under a different case number (*i.e.*, a second bankruptcy petition filed three years after the discharge order at issue). 794 F.3d at 1319.

On the jurisdictional question, the court noted that "'the court that issued the injunctive order alone possesses the power to enforce compliance with and punish contempt of that order,' and this 'power to sanction contempt is jurisdictional.'" *Id.* at 1318-19 (quoting *Alderwoods Grp.*, 682 F.3d at 970). The question then was whether the "court" with power to punish contempt extended beyond the original case. *See id.* at 1319 ("[O]ur concern was that the bankruptcy court might have acted beyond its jurisdiction in enforcing the discharge injunction

issued under a different case number.").  The court cited *Alderwoods Group* for the proposition the contempt power "was 'equal' to and reflective of a court's power to issue an underlying order in the first place, implying that "the contempt power is vested at the same level of organization as Congress's grant of jurisdiction" and, therefore, "suggests that a court's power to punish any contempt against it transcends case numbers or the presence of individual judges and lies with the entire tribunal." *Id.* at 1319 n.2.  Therefore, the court held the bankruptcy court had properly entered the contempt order enforcing the previous discharge order in the new bankruptcy case. *Id.* at 1319-20 ("The bankruptcy court therefore had jurisdiction to entertain a motion for contempt in the McLeans' second bankruptcy case for a violation of the discharge injunction from their first . . . .").  Accordingly, there is no jurisdictional issue with raising a contempt proceeding under a new case number as long as it is in the same court.

On a related issue, because a bankruptcy court is a unit of the district court and acquires its authority from the grant of jurisdiction to that court, the "entire tribunal," whose authority the contempt power vindicates, must be the district court (which includes the bankruptcy court), whose exclusive authority was exercised in the original discharge injunction.  *See* 28 U.S.C. § 1334 (giving district courts exclusive jurisdiction over bankruptcy cases); *id.* § 151 ("In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district."); *id.* § 157(a) (providing for referral to the bankruptcy judges of the district); *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1543, 1544, 1547-49 (11th Cir. 1996) (reversing and remanding to the district court a contempt motion, upon which the district court had withdrawn the reference and entered a final order).[7]

---

[7] Ultimately, the *McLean* court expressed its holding in terms that the United States Bankruptcy Court for the Middle District of Alabama had sole power to enforce compliance with the discharge injunction, "irrespective of the case number of, or the judge who might have

## 2. Procedural Issues

On the procedural question, Defendants and the Caldwells are each partly correct.  As Defendants contend, a contempt proceeding must be brought by motion in the court issuing the discharge order.  *See McLean*, 794 F.3d at 1326 (holding that, although it was not reversible error when the defending party did not object, it is an error to be corrected when a contempt proceeding is brought as an adversary proceeding instead of a contested matter).  Accordingly, the Court construes Count I as a contested matter under Bankruptcy Rule 9014. Although the motion should have been filed in the bankruptcy court, the undersigned acknowledges the economy of keeping the claims together and understands the Caldwells' reluctance to split them up considering the time and effort it would take to get them back together and the risk of, failing that, having to conduct the same trial twice.  Because, as discussed above, nothing prevents a motion for a contempt order from being filed in a different case in the same court, the issue before the Court is whether, as the Caldwells have argued, the reference to the Bankruptcy Court should be withdrawn.

The reference to the Bankruptcy Court is not absolute because 28 U.S.C. § 157(d) provides for withdrawal under limited circumstances, sometimes mandatorily, sometimes permissively.  The district court is required to withdraw a proceeding "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *Id.*  "Most courts . . . , including all district courts within the Eleventh Circuit that have considered the issue,

---

presided over, the prior proceeding." *Id.* at 1319.  While this language, on its face, could be limited to state only the bankruptcy court has the power to enforce the order, the court was dealing with whether contempt jurisdiction was confined to a particular case.  The rationale for holding that it was not also supports the conclusion the district court also falls within the meaning of "court" and may, if appropriate, withdraw the reference on contempt proceedings.

have found that withdrawal should be granted only if the current proceeding could not be resolved without substantial and material consideration of the non-Code federal law." *Thompson v. LVNV Funding, LLC*, 534 B.R. 816, 818 (N.D. Ala. 2015) (internal quotation marks omitted).

The Caldwells contend the withdrawal is mandatory because they have brought FDCPA claims based on post-discharge conduct, which cannot be heard in the bankruptcy court. (Doc. 18 at 6-7).  While the FDCPA claim would certainly require withdrawal of those claims if they had been raised in the Bankruptcy Court, those claims were filed in this Court and never referred to the Bankruptcy Court.  The real question is whether the bankruptcy matters (*i.e.*, the contempt count), which should have been filed in the Bankruptcy Court and could easily be dismissed without prejudice or severed from the rest of the claims and transferred to the Bankruptcy Court, should be kept in this Court as part of this case.  *Cf. Church v. Accretive Health, Inc.*, No. 14-0057-WS-B, 2014 WL 7184340, at *14 (S.D. Ala. Dec. 16, 2014) (dismissing); *Land Ventures for 2, LLC v. Fritz*, No. 2:12-CV-240-WKW, 2015 WL 5919879, at *6 (M.D. Ala. Oct. 9, 2015) (affirming transfer).  Because the contempt proceeding could be resolved without any consideration of non-Code federal law, much less "substantial or material" consideration, withdrawal of that claim is not mandatory.  If the contempt count remains at part of this case, it will be under the permissive prong of § 157(d).

Specifically, the Court is permitted to withdraw all or part of a proceeding "for cause shown."  28 U.S.C. § 157(d).  When determining whether cause exits to withdraw a case from the Bankruptcy Court, a district court should consider: "(1) the advancement of uniformity in bankruptcy administration; (2) decreasing forum shopping and confusion; (3) promoting the economical use of the parties' resources; . . . (4) facilitating the bankruptcy process"; "[5] whether the claim is core or non-core; [6] efficient use of judicial resources; [7] a jury demand;

and [8] prevention of delay." *Washington v. LVNV Funding, LLC*, No. 7:14-MC-02054-RDP, 2015 WL 1245741, at *3 (N.D. Ala. Mar. 18, 2015) (quoting *In re Childs*, 342 B.R. 823, 827 (Bankr. M.D. Ala. 2006)) (internal quotation marks omitted).

The Caldwells contend judicial economy supports their request for withdrawal of the reference. (Doc. 18 at 8). Defendants refer to the court's finding in *Church v. Accretive Health, Inc.* that "a considerable body of authority has concluded that the bankruptcy judge who issued the discharge order is the only appropriate authority to decide whether (and if so what type and magnitude of) civil contempt sanctions are warranted in the § 524 context" and concluding that any contempt motion should be directed in the first instance to the bankruptcy judge. (Doc. 22 at 4; doc. 23 at 4) (quoting *Church*, No. 14-0057-WS-B, 2014 WL 7184340, at *11).

The *Church* court relied on the Seventh Circuit's reasoning that the court that issued the discharge order is in a better position than a judge in whatever federal district the plaintiff managed to serve the defendant, and on the Ninth Circuit's similar fear that a private remedy could put enforcement of the discharge injunction in the hands of a court that did not issue it instead of the bankruptcy judge who did. *See* No. 14-0057-WS-B, 2014 WL 7184340, at *11 (quoting *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 916 (7th Cir. 2001), and *Walls*, 276 F.3d at 509). Neither of these circuit cases was dealing with a withdrawal of the reference, and withdrawing the reference does not touch on those court's concerns because the contempt proceeding would still be in the district that issued the discharge order. Furthermore, although the *Wall* court referenced the contempt proceeding being in front of the bankruptcy judge who issued the discharge order, the bankruptcy judge in the Caldwells' case has since retired so the "judge whose discharge order gave rise to the injunction" would not preside over the contempt proceeding even if the original case were reopened.

Although withdrawal of the reference, to some degree, undermines the normal bankruptcy procedures and, since contempt of the discharge injunction is a core bankruptcy issue, also undermines the efficient use of the Bankruptcy Court's expertise as a judicial resource, the countervailing promotion of economical use of the parties' and the Court's resources and the avoidance of delay by having the same issues dealt with only once in the same proceeding outweighs those considerations. *See, e.g.*, *Lomax v. Bank of Am., N.A.*, 435 B.R. 362, 376 (N.D.W. Va. 2010) (not explicitly applying these factors but finding cause existed to withdraw the reference regarding claims of bankruptcy injunction violations because of the judicial economy of keeping them together with the plaintiff's FDCPA claims). Further, forum shopping does not appear to be a major consideration beyond the economic factors already discussed (which apply to both parties and the Court), and, there being no jury demand in this case, the "jury demand" factor does not weigh in favor of either side. Therefore, the Court finds there is cause to **WITHDRAW** the reference on the Caldwells' contempt count, and Defendants' request to dismiss this count because it is not an independent cause of action is **DENIED**.

## IV. Conclusion

Based on the foregoing, Defendants' motions to dismiss, (docs. 7 & 10), are **GRANTED IN PART and DENIED IN PART**. Specifically, Counts III and IV are **DISMISSED**; Count V is **DISMISSED**, but only as a separate count and without any effect on the underlying claim for attorney's fees; and Counts I and II remain pending.

DONE this 8th day of September, 2016.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

21