## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DEMETRIUS D. CALDWELL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.:  2:15-cv-01923-JHE |
| | ) | |
| REDSTONE FEDERAL CREDIT UNION, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

On January 30, 2018, Defendants Redstone Federal Credit Union ("Redstone") and the Law Office of C. Howard Grisham ("Grisham") moved for partial dismissal of Plaintiffs' Second Amended Class Action Complaint, (doc. 75), under Fed. R. Civ. P. 12(b)(6) for failure to state a claim as to six of the eight named plaintiffs. (Docs. 76 & 79). Plaintiffs filed a response opposing both motions, (doc. 84), and both Defendants replied, (docs. 87 & 88). Plaintiffs have also moved for leave to file a sur-reply, (doc. 89), which is opposed by Defendants, (docs. 91 & 92). Plaintiffs moved for, (doc. 93), and were granted, (doc. 94), leave to file a supplemental opposition brief, (doc. 95), and Defendants have filed supplemental replies, (docs. 96 & 97). Finally, Plaintiffs have moved for leave to file a sur-reply to their supplemental opposition brief, (doc. 98), which Defendants also oppose, (docs. 99 & 100).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 15).

The motions are fully briefed and ripe for review. For the reasons stated more fully below, the motions to dismiss are **GRANTED IN PART and DENIED IN PART**.

## I. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557, 127 S. Ct. 1955). Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950.

The court accepts all factual allegations as true on a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1950.

## II. Background

### A. Procedural History

On October 29, 2015, Plaintiffs Demetrius and Sabrina Caldwell (the "Caldwells") initiated this action on behalf of themselves and a purported class against Redstone and Grisham, alleging five counts including a bankruptcy count of contempt for violating discharge injunctions[2] and a count for violations of the Fair Debt Collection Practices Act ("FDCPA"). (Doc. 1). Defendants moved to dismiss the Caldwells' claims, (docs 7 & 10), and the undersigned granted those motions in part and denied them in part on October 17, 2016, dismissing all but the two claims identified above. (Doc. 30).

On June 14, 2017, Plaintiffs amended their complaint, adding six additional named plaintiffs: Jane B. Locklin, Bart Reeves, Davis A. Mitchell, Jeremy D. Holland, Jessalyn Hooper, and Lorondo Brazelton (collectively, the "New Plaintiffs"). (Doc. 48 at ¶¶ 5-10). While the Amended Complaint alleged generally that the New Plaintiffs had been subjected to Defendants'

---

[2] On April 26, 2016, because of the unusual circumstances of this case, Chief Judge Karon Bowdre, acting on behalf of the Court, designated the undersigned magistrate judge to exercise authority over the bankruptcy matters arising herein, including the issue of whether to withdraw the reference to the Bankruptcy Court. (Doc. 25).

attempts to collect debts discharged in bankruptcy, it did not identify how Defendants had done so. Both Defendants moved to dismiss. (Docs. 51 & 53). Granting Defendants' alternative motions for a more definite statement, the undersigned ordered Plaintiffs to file an amended complaint "which should include the factual basis for the New Plaintiffs' claims that Defendants wrongfully attempted to collect the debts they discharged in bankruptcy." (Doc. 73 at 8). On January 30, 2018, Plaintiffs filed their Second Amended Complaint, containing the facts below. (Doc. 75).

### B. Facts[3]

Each of the New Plaintiffs filed a Chapter 7 bankruptcy petition in the Northern District of Alabama. (Doc. 75 at ¶ 14). Each owed money to Redstone and/or Grisham. (*Id.* at ¶ 15). Each Plaintiff received a discharge from the Bankruptcy Court. (*Id.* at 18). Nevertheless, Redstone— which had been mailed a copy of the discharge orders in each case—used Grisham to attempt to collect the discharged debt. (*Id.* at ¶¶ 19-20).

### 1. Jane B. Locklin ("Locklin")

Redstone obtained a judgment against Locklin on June 17, 2005, and recorded the judgment on June 27, 2005. (*Id.* at ¶ 26). Locklin filed for Chapter 7 bankruptcy on January 8, 2007, and received a discharge of Redstone's debt on April 18, 2007. (*Id.* at ¶¶ 27-28). Defendants revived the judgment on March 17, 2015, and later recorded the revived judgment in the Madison

---

[3] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In other words, these "facts" are taken directly from the second amended complaint.

County Probate Office.  (*Id*. at ¶ 29).  In April 2015, Defendants sent Locklin correspondence demanding payment of the debt.  (*Id*. at ¶ 30).

### 2. Bart Reeves ("Reeves"),

Redstone recorded a judgment against Reeves on January 10, 2010, in the Morgan County Probate Court.  (*Id*. at ¶ 31).  Reeves filed for Chapter 7 bankruptcy on August 26, 2011, receiving a discharge of Redstone's debt on November 29, 2011.  (*Id*. at ¶¶ 32-33).  Defendants have neither satisfied the judgment nor filed pleadings with any probate court or the Circuit Court of Madison County indicating that Reeves's debt was discharged in bankruptcy.  (*Id*. at ¶ 34).

### 3. Davis A. Mitchell ("Mitchell")

Redstone recorded a judgment in the Morgan County Probate Court on December 22, 2008.[4]  (*Id*. at ¶ 35).  Mitchell filed for Chapter 7 bankruptcy on May 18, 2013, and received a discharge of Redstone's debt on August 14, 2013.  (*Id*. at ¶¶ 36-37).  As with Reeves, Defendants have not satisfied the judgment, nor have they filed pleadings in the Circuit Court of Morgan County or any probate court indicating the debt was discharged.  (*Id*. at ¶ 38).  Additionally, the judgment has attached to real property Mitchell acquired after the discharge of his debt.  (*Id*. at ¶ 39).

### 4. Jeremy D. Holland ("Holland")

Defendants recorded a judgment against Holland in the Morgan County Probate Court on June 1, 2011.  (*Id*. at ¶ 40).  Holland filed for Chapter 7 bankruptcy on December 27, 2011.  (*Id*. at ¶ 41).  He then received a discharge of Redstone's debt on March 27, 2012.  (*Id*. at ¶ 42).  Defendants have not satisfied the judgment or filed pleadings in the Circuit Court of Morgan

---

[4] Presumably, this is the judgment against Mitchell referenced in subsequent paragraphs.

County or any probate court reflecting the debt was discharged in bankruptcy, and Holland's credit report reflects he still owes the $22,867 amount of the judgment. (*Id*. at ¶ 43).

### 5. Jessalyn Hooper ("Hooper")

Hooper, formerly known as "Jessalyn N. Mobley," filed for Chapter 7 bankruptcy on June 8, 2005, and received a discharge of a judgment recorded against him by Defendants on May 3, 2005 in the Madison County Probate Court. (*Id*. at ¶¶ 44-46). Defendants have not satisfied the judgment or filed pleadings in the District Court of Madison County or any probate court to reflect that the debt has been discharged. (*Id*. at ¶ 47). As with Mitchell, Hooper obtained real property after the discharge to which the judgment has attached. (*Id*. at ¶ 48).

### 6. Lorondo Brazelton ("Brazelton")

Defendants recorded a judgment against Brazleton in the Madison County Probate Court on May 1, 2007. (*Id*. at ¶ 49). Brazleton filed for Chapter 7 bankruptcy on August 1, 2007, and received a discharge of Redstone's debt on November 14, 2007. (*Id*. at ¶¶ 50-51). Defendants have not satisfied the judgment or filed pleadings in the District Court of Madison County or any probate court indicating the debt has been discharged. (*Id*. at ¶ 52).

### III. Analysis

Defendants contend the New Plaintiffs have failed, for various reasons, to articulate actionable violations of the discharge injunctions and the FDCPA. As a preliminary matter, though, the undersigned will address Plaintiffs' motions for leave to file sur-replies.

### A. Motions for leave to file sur-replies (Docs. 89 & 98)

Plaintiffs have moved for leave to file a sur-reply to Defendants' replies to the original motion, (doc. 89), and to Defendants' responses to their supplemental opposition brief, (doc. 98).

In their first motion for leave to file a sur-reply, (doc. 89), Plaintiffs contend they should be allowed to file the proposed sur-reply attached to their motion, (doc. 89-1), because Defendants have raised additional issues in their reply briefs, mischaracterized the holding of a case, and misinterpreted the law on lien enforcement. (Doc. 89 at ¶ 1). Defendants point out that the reply briefs contain no new issues and that, to the extent they are arguably incorrect on the law, the court can determine that without the need for a sur-reply. (Docs. 91 & 92).

Plaintiffs second motion for leave to file a sur-reply is based on their contention they "feel compelled to respond to certain statements made in Defendants' Responses" to their supplemental response brief. (Doc. 98 at ¶ 1). In their motion, filed almost a month after Defendants' responses, Plaintiffs contend Defendants argue questions of fact, cite an abrogated case,[5] and again misstate the law. (*Id*. at ¶¶ 1-2). Opposing the motion, Grisham responds by noting Plaintiffs have failed to identify a basis other than a desire to respond for their sur-reply. (Doc. 99 at ¶ 1). Grisham then defends its response on the merits. (*Id*. at ¶¶ 2-5). Redstone notes the delay between the responses and motion for leave, adopts Grisham's arguments, and reasserts its arguments against Plaintiffs' prior motion for leave. (Doc. 100).

The undersigned has considered the arguments Plaintiffs offer for the necessity of sur-replies, and none are compelling. Therefore, both motions are **DENIED**.[6]

---

[5] Plaintiffs neglect to mention Defendants both cited the same allegedly abrogated case, *In re Wrenn*, 40 F.3d 1162 (11th Cir. 1994), in support of their motions to dismiss. (*See* doc. 78 at 12; doc. 79 at 3).

[6] Even if the motions had been granted and the sur-replies considered, none of the arguments Plaintiffs advance in them would alter the conclusions in this memorandum opinion.

## B. Count I – Contempt of Discharge Injunction

Defendants [7] argue none of the conduct alleged by Plaintiffs violated the discharge injunction. As to Reeves, Mitchell, Holland, Hooper, and Brazelton, Defendants state that they did not take any actions at all, and omissions of the kind Plaintiffs allege are insufficient to state a contempt claim. They separately argue they did not violate the injunction as to Locklin (the only New Plaintiff alleging an affirmative act by Defendants) because the judgment lien Locklin references was specifically not avoided in her bankruptcy and their actions related to an *in rem* proceeding against the property, not against Locklin personally. Plaintiffs assert the totality of the circumstances shows that Defendants' inaction with respect to the non-Locklin New Plaintiffs was intended to pressure them into repaying the discharged debts and in any event Defendants' lack of adequate policies and procedures to avoid inadvertent violations itself violated the injunction. (Doc. 84 at 8). As to Locklin, Plaintiffs dispute the judgment lien could legally be revived at all and that it was a prohibited continuation of an action to collect debt as a personal liability of the debtor. (*Id*. at 11-13). Additionally, they state the letter sent by Grisham to Locklin violated the injunction because, notwithstanding its formal designation, the effect of the letter was to pressure Locklin into repaying the discharged debt; because that determination should be made on a fully-developed factual record, Plaintiffs argue, it is inappropriate for dismissal under Rule 12(b)(6). (*Id*. at 13-14).

---

[7] As with its response to the motion for leave to file a sur-reply, Grisham adopts the arguments Redstone advances in its motion to dismiss, (doc. 79 at ¶ 2), and its reply brief, (doc. 88 at 1). For convenience and readability, this memorandum opinion attributes the arguments made in Redstone's briefs to Defendants collectively, To the extent Grisham offers separate arguments (which it does with respect to the FDCPA claim against it), those arguments are attributed only to Grisham.

A discharge in a bankruptcy case:

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

11 U.S.C. § 524(a). In the Eleventh Circuit, "the test for whether a creditor violates the discharge injunction under 11 U.S.C. § 524(a)(2) is whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt." *In re McLean,* 794 F.3d 1313, 1321–22 (11th Cir. 2015). To state a claim for contempt of the discharge injunction, a plaintiff must allege facts supporting that a creditor was (1) aware of the discharge injunction and (2) intended the act that violated it. *Id.* at 1323.

**1. New Plaintiffs other than Locklin[8]**

The common element to these Plaintiffs' claims is inaction by Defendants. For each, the second amended complaint indicates Defendants failed to satisfy judgments discharged in

---

[8] For the purposes of this section, "Plaintiffs" refers only to the New Plaintiffs other than Locklin.

bankruptcy or file pleadings indicating the debt was discharged. (Doc. 75 at ¶¶ 34, 38, 43, 47 & 52). Plaintiffs allege additional consequences of this failure for Mitchell and Hooper, who have subsequently acquired real property "to which this judgment has wrongfully attached and wrongfully encumbered," (*id.* at ¶¶ 39 & 48), and for Holland, whose "credit report reflects that this judgment remains owed by him in the amount of $22,867," (*id.* at ¶ 43).

Defendants' primary argument is, simply, that "[d]oing nothing does not violate § 524." (Doc. 78 at 6). The language of the statute supports this reading: the discharge enjoins "the <u>commencement</u> or <u>continuation</u> of an action, the <u>employment</u> of process, or <u>an act</u>, to collect, recover or offset [a discharged debt] as a personal liability of the debtor," 11 U.S.C. § 524(a)(2) (emphasis added), all of which suggest action by a creditor. Consistent with its language, courts have generally read this provision to require an affirmative act on the part of a creditor before finding a violation of a discharge order. *See, e.g., In re Dendy*, 396 B.R. 171, 179 (Bankr. D.S.C. 2008); *In re Casarotto*, 407 B.R. 369, 377 (Bankr. W.D. Mo. 2009). *See also In re Bruno*, 356 B.R. 89, 92 (Bankr. W.D.N.Y. 2006) ("[I]t can be readily seen that neither 11 U.S.C. § 524 nor the discharge orders that are routinely entered by this Court expressly compel any affirmative action of any sort by any creditor whose debt has been discharged.").

Attempting to show Defendants' inaction is actionable, Plaintiffs raise a variety of arguments, some applicable to each of them and some applicable only to specific Plaintiffs. Each is addressed below.

### a. Lack of policies and procedures (all New Plaintiffs)

Plaintiffs first allege Defendants' lack of meaningful policies and procedures to prevent inadvertent violations of the discharge order was itself a violation of the discharge order. (Doc. 84 at 8-9). The primary problem for this argument is that Plaintiffs point to no factual allegation

in the second amended complaint to support it, and the undersigned has found none.  (*See generally*
doc. 75).  But even if the complaint contained factual support for this claim, none of the authority
Plaintiffs offer stands for the proposition that a creditor violates § 524 solely by having inadequate
policies and procedures.

The first case Plaintiffs cite, *McClure v. Bank of America (In re McClure)*, 420 B.R. 655,
660 (Bankr. N.D. Tex. 2009), does not (as Defendants point out) contain the block quotation that
Plaintiffs include in their brief.  Instead, Plaintiffs likely intended to excerpt *McLean v. Greenpoint
Credit LLC*, 515 B.R. 841 (M.D. Ala. 2014) ("*McLean I*"), *aff'd in part, vacated in part, remanded
sub nom. Green Point Credit, LLC, Green Tree Servicing LLC v. Eric Allen McLean, Deborah
Dianne McLean (In re Eric Allen McLean, Deborah Dianne McLean)*, 794 F.3d 1313 (11th Cir.
2015) ("*McLean II*").  *Compare id.* at 851-52 *with* (doc. 84 at 9).  In *McLean I*, the court found
that the inadequate debt collection software used by the defendant meant that the defendant's
violation of the discharge injunction rose to the level of reckless disregard.  515 B.R. at 851.  The
underlying violation, though, was filing a proof of claim in a Chapter 13 bankruptcy of a debt that
had been discharged in a prior Chapter 7 bankruptcy, not the deficient software.[9]  *Id*. at 844-46.

In *McClure*, the case Plaintiffs' citation actually points to, a bank referred two accounts
discharged in bankruptcy to a collection agency.  420 B.R. at 659.  A collection agent then
attempted to collect on one account by calling the debtor and, when the debtor returned the call,

---

[9] In *McLean II*, the Eleventh Circuit vacated a portion of this decision on the basis the
bankruptcy court had applied the wrong standards in imposing sanctions on the creditor.  794 F.3d
at 1324-26.  As to the violation itself, the court described the question presented as "whether a
violation of the discharge injunction under 11 U.S.C. § 524(a)(2) occurs when a creditor files a
proof of claim in a bankruptcy proceeding for a debt discharged in an earlier proceeding."  *Id*. at
1320.

11

threatening to send someone to the debtor's house and file a lawsuit against the debtor. *Id*. at 661. The debtor informed the agent that he had discharged the debt in bankruptcy, but the debt collection software did not flag the other account; another collection agent attempted to collect on that account by sending a collection letter to the debtor and attempting to call the debtor. *Id*. at 661-62. The court determined the inadequacy of the collection agency's software supported that the second agent's attempts to collect the debt were a knowing violation by the company, but did not consider the deficient software as a separate violation. *Id*.

Plaintiffs next cite *In re Roush,* 88 B.R. 163 (Bankr. S.D. Ohio 1988). In that case, a law firm, purporting to act on behalf of a bank, sent a letter to debtors attempting to collect a balance of $9,127.59 that had been discharged in bankruptcy. *Id*. at 164. The debtors then contacted the law firm to inform them of the bankruptcy, and no further collection attempts were made. *Id*. There was no dispute that a violation had occurred, and the court's analysis of the bank's policies and procedures related only to whether that violation was willful. *Id*. at 164-65.

In the last case Plaintiffs cite, *In re Walker*, 180 B.R. 834 (Bankr. W.D.La. 1995), the debtor discharged in bankruptcy debts related to two automobiles he had purchased from his employer. *Id*. at 838. Notwithstanding the discharge, the employer continued to retain money from the debtor's paycheck. *Id*. After the debtor quit his job, the employer notified him it intended to retain a collection agency and to sue him. *Id*. The employer conveyed the accounts to a collection agency without telling it of the debtor's bankruptcy; the collection agency then sued the debtor, obtained a default judgment against him when he did not answer, and began garnishing the debtor's paycheck. *Id*. at 838-39. The court identified numerous violations of the discharge injunction by the employer, which attempted to escape liability for violations by the collection agency by claiming the agency's actions were independent. *Id*. at 843-45. Only then, having

established and discussed the § 524 violations, did the court turn to discussion of the employer's bookkeeping and business practices, determining that they were designed in such a way that they compelled the court to find that the employer "was certainly aware of the [collection agency's] actions, acquiesced to the collection activities against persons who may have paid their debt, received monetary benefits from such activities, and was determined to recoup its losses irrespective of the post-discharge injunction or other legal restraints." *Id*. at 845.

In each of these cases, there was at least one collection action separate from the creditor's policies and procedures that violated the discharge injunction, and in each case the court's attention was on that violation. Plaintiffs state that they "allege that Defendants lacked any meaningful policies and procedures to prevent the collection of discharged debts and, as a result, Plaintiffs' rights have been violated." (Doc. 84 at 11). If Plaintiffs claim that the absence of policies and procedures independently violated their rights, this is circular.[10] And if they intend to point to the policies and procedures as an aggravating factor (e.g., to support willfulness, (*see* doc. 75 at 1)), that does not help them demonstrate an underlying violation of the discharge injunction. Therefore, to the extent their complaint supports it at all, Plaintiffs cannot rely on Defendants' lack of policies and procedures to establish a violation of the discharge injunction.

**b. Failure to correct public records of judgments (all New Plaintiffs)**

---

[10] Additionally, to the extent Plaintiffs contend they have been injured due to the specter of hypothetical future § 524 violations, they lack standing to assert those claims. *See Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III.").

Each New Plaintiff argues the failure to satisfy judgments and/or file pleadings indicating the judgments have been satisfied is a violation § 524. Two of the plaintiffs—Reeves and Brazelton—rest their claims on this purported violation alone.

Plaintiffs request the court look to the objective effect of Defendants' failure to correct the public record, which they say was to pressure the New Plaintiffs into paying back the discharged debt. (Doc. 84 at 18). This puts the cart before the horse. Before the court can look to the objective effect of an action that violates the discharge injunction, there must be some action to examine. *See McLean II*, 794 F.3d at 1321–22 ("the test for whether a creditor violates the discharge injunction under 11 U.S.C. § 524(a)(2) is whether the objective effect <u>of the creditor's action</u> is to pressure a debtor to repay a discharged debt.") (emphasis added).

Contradicting their argument that failure to correct records alone supports a violation of the discharge injunction, Plaintiffs attempt to distinguish the facts in this case from those cited by Defendants by arguing "Defendants rely on cases involving creditors that took **no action**, rather than facts presented by Plaintiffs who allege affirmative acts coupled with subsequent inaction resulting in a violation of the discharge order." (Doc. 84 at 18) (emphasis in original). Specifically, they argue *In re Casarotto*, 407 B.R. 369 (Bankr. W.D. Mo. 2009), actually supports their position. Defendants cite the case for the proposition that a "creditor's refusal to release tax lien did not violate the discharge injunction because '[t]he mere act of refusing to release a lien, even if invalid, does not violate the discharge injunction absent an attempt to enforce the lien, a violation of a court order, or an intent to collect the debt.'" (Doc. 78 at 7) (citing *Casorotto*, 407 B.R. at 377). Plaintiffs contend that there is such an attempt to enforce liens here by pointing to several allegedly affirmative acts they say Defendants have taken: executing on the Caldwells' newly-purchased home, sending a demand letter to Locklin, reporting to credit reporting agencies

14

that debts discharged by Holland remain owed, attaching the judgment to Mitchell's newly-acquired property, and "maintaining a judgment on public records as if that debt remains due and owing of the debtors" as to all Plaintiffs.  (Doc. 84 at 20).  Not only is the last of these not an affirmative act by Defendants, it cannot be an "affirmative act[] coupled with subsequent inaction" because it <u>is</u> the subsequent inaction.  Referring to actions Defendants took against the Caldwells is also irrelevant to whether they took action against the New Plaintiffs (nor have Defendants moved to dismiss the Caldwells' claims).  As to the remaining acts (which are discussed below), whether or not they would support a violation of the discharge injunction is irrelevant to whether Defendants' failure to affirmatively address records of judgments is itself a separate violation of the discharge injunction.

The only case Plaintiffs actually point to in support of their position is *In re Johnson*, 466 B.R. 67 (Bankr. E.D. Va. 2012), which they relegate to a footnote in their response.  (Doc. 84 at 18 n.16).  In *Johnson*, the creditor obtained a judgment against the debtor and, pre-petition, docketed it in a state court clerk's office.  *Id*. at 69.  Under Virginia law, "[t]he docketing of a judgment in the clerk's office of a circuit court in Virginia creates a lien on all real property owned by the judgment debtor in that city or county."  *Id.* (citing VA. CODE (1950) § 8.01–458; *Ryan v. Kanawha Val. Bank*, 71 F. 912 (4th Cir.1895); *Hill v. Rixey*, 67 Va. (26 Gratt.) 72 (1875)).  With no citation to any authority, the court stated that "[a] judgment creditor must take action to evidence the effect of a bankruptcy discharge on its judgment . . . Doing nothing is effectively an action to collect the debt as the personal liability of the debtor and violates 11 U.S.C. § 524(a)(2)."  *Id*. at 69-70.  Following a lengthy discussion of Virginia law, the court reiterated: "[a] creditor's responsibility to mark a docketed judgment as 'discharged in bankruptcy' arises independently under both the Code of Virginia and the Bankruptcy Code. The Bankruptcy Code does not permit

a judgment creditor to stand idly by when he knows that his debt has been discharged." *Id*. at 72. Despite these expansive pronouncements, the *Johnson* court did nothing to connect the creditor's inaction to pressure on the debtor to repay the debt, which is what is required in the Eleventh Circuit. Additionally, the sole federal bankruptcy case the court relied on for its holding, *In re Williams–Nobles*, 459 B.R. 242 (Bankr. E.D. Va. 2011), deals with a creditor's failure to dismiss a prepetition garnishment, which is distinguishable from the failure to note a discharge in bankruptcy on a judgment. If a creditor fails to dismiss a garnishment, "collection activity" in the traditional sense continues: the debtor's money is transferred to the creditor without any additional action by either party. Conversely, there is a mechanical step between a creditor's failure to notate a discharge in bankruptcy on a judgment and its attempt to collect a debt; some other action is necessary to move money from the debtor's pockets to the creditor's coffers. The *Johnson* court seems to have ignored that step, stretching the holding of *Williams-Nobles* beyond its reasonable limits. *Johnson* is not binding on this court, and its reasoning—to the extent it relies on the Bankruptcy Code and not Virginia law—is conclusory and unpersuasive, when not wholly misplaced.

Plaintiffs' final effort to advance this argument comes in their supplemental brief, where they contend the recent opinion in *Ellswick v. Quantum3 Group, LLC*, No. 1:16-CV-01959-MHH, 2018 WL 1408536 (N.D. Ala. Mar. 21, 2018), supports that a creditor may violate the discharge injunction "by failing to update or otherwise notate on a judgment that the debt has been discharged and thereby maintaining a posture or position as to its debt that is misleading and/or deceptive." (Doc. 95 at 5). But *Ellswick* does not actually help Plaintiffs. In *Ellswick*, a creditor made a false representation in a proof of claim in a Chapter 13 bankruptcy proceeding. 2018 WL 1408536 at *3. The plaintiff alleged this violated 15 U.S.C. § 1692e, which prohibits the use of "false,

deceptive, or misleading representation[s] or means in connection with the collection of any debt"

(and which is discussed further below). *Id*. at *2. *Ellswick* resolved whether this representation

was actionable under the FDCPA if the debtor alleged it was only false and not misleading; the

court concluded it was. *Id*. at *6-8. Even assuming the FDCPA standard applied in *Ellswick*

mapped perfectly onto Plaintiffs' claims of discharge injunction violations,[11] though, the issue in

this case is not about the falsity or misleading character of the public record; it is whether

Defendants, by failing to update the records, engaged in affirmative activity sufficient to violate

the discharge injunction. *Ellswick* does not attempt to answer this question, and its holding does

not support Defendants' inaction as a violation of § 524.

### c. Credit reporting (Holland)

In addition to failure to correct public records related to judgments against him, Holland

alleges Defendants have not indicated on his credit report that his debt to them was discharged in

bankruptcy. (Doc. 75 at ¶ 43). Defendants contend they had no affirmative obligation to note this

change and did not violate § 524 by failing to report it. (Doc. 78 at 9-11).

While discharging a debt in bankruptcy relieves the debtor from personal liability for the

debts, it does not actually erase the debt. *In re Giles*, 502 B.R. 892, 904 (Bankr. N.D. Ga. 2013)

(quoting *Matter of Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993)). Although there appears to be no

controlling law in the Eleventh Circuit on the issue, numerous courts have found that continuing

to report a discharged debt to a credit reporting agency, on its own, does not violate § 524. *See In*

---

[11] "[T]here is no indication in the Bankruptcy Code that Congress intended for the bankruptcy courts to scrutinize discharge violations under the standards of the FDCPA." *In re Roth*, 568 B.R. 139, 145 (M.D. Fla. 2017).

*re Bruno*, 356 B.R. 89, 92 (Bankr. W.D.N.Y. 2006) (creditor was not obligated to affirmatively report that debts had been discharged, and failure to do so does not violate discharge injunction); *In re Irby*, 337 B.R. 293, 294 (Bankr. N.D. Ohio 2005) (same); *In re Mahoney*, 368 B.R. 579, 580 (Bankr. W.D. Tex. 2007) ("without any evidence of harassment, coercion, or some other linkage to show that the act is one likely to be effective as a debt collection device," reporting a debt to a credit reporting agency does not violate § 524). *Cf. In re Keller*, 568 B.R. 118, 123-26 (B.A.P. 9th Cir. 2017) (noting the "standard for violations of the automatic stay [provision of 11 U.S.C. § 362(a)] and the discharge injunction are similar" and holding continued reporting of delinquent debt to credit reporting agencies, standing alone, was not "collection activity" violating the automatic stay).

Challenging this general premise, Holland first cites *In re Torres*, 367 B.R. 478 (Bankr. S.D.N.Y. 2007), for the proposition "[o]ther courts have had no difficulty recognizing that false or outdated reporting to credit reporting agencies, <u>even without additional collection activity</u>, can constitute an act to extract payment of a debt in violation of section 524(a)(2)." (Doc. 84 at 20) (quoting *Torres*, 367 B.R. at 486-87) (emphasis added by Plaintiffs). However, Holland omits crucial portions of *Torres* that demonstrate its logic does not apply to his allegations. The *Torres* court summarized the plaintiffs' allegations as follows:

> The plaintiffs allege that, <u>notwithstanding their attempts to cause their credit reports to be updated</u>, the reports continue to show their obligations to Chase as "past due" and/or "charged off," with no notation that the debts have been affected by bankruptcy. The plaintiffs allege that Chase's <u>refusal to update the information</u> that it previously provided to the credit reporting agencies regarding their outstanding debts will cause end users of the credit reports to conclude that the plaintiffs still owe an enforceable debt to Chase, thus adversely affecting the plaintiffs' credit scores and ability to obtain new credit. Given Chase's <u>refusal (which continues to date) to update the information</u> it provided to the credit reporting agencies, the plaintiffs contend that the only way to change their credit reports (other than by

starting these proceedings) is to pay their debts in derogation of their discharges, a consequence, they contend, that Chase understands and intends.

*Torres*, 367 B.R. at 480 (emphasis added). Distinguishing the case from several cited by the defendant for the proposition that failing to update a credit report could never constitute debt collection activity, the court stated:

> In contrast, both complaints presently before the Court (although the *Torres* complaint contains more detailed allegations regarding a pattern of such behavior on Chase's part), whose averments the Court must accept as true for purposes of these motions, allege more than merely false reporting. They allege that Chase refuses to honor the plaintiffs' request to correct the information it previously supplied to the credit reporting agencies because Chase knows the pressure this places on plaintiffs to pay their debts, notwithstanding their discharges, and intends to keep that pressure in place.

*Id.* at 485 (emphasis added). The court then concluded the defendant's failure to update the credit reports in response to the plaintiffs' requests allowed it to infer an improper purpose to pressure the plaintiffs to repay their debts. *Id*. at 488-89. Holland does not allege he requested Defendants update his credit report (or anything more than "mere false reporting"), so there is no factual allegation that would support a similar inference here. *Torres* is not on point.

Neither is *In re Russell*, 378 B.R. 735 (Bankr. E.D.N.Y. 2007). Although the defendant in that case made similar arguments to Defendants (i.e., that it had no obligation to update the plaintiff's credit information and that the debt itself was not extinguished), the court repeatedly noted the defendant had engaged in action beyond simply reporting the debt. *Id*. at 741-43. Specifically, the defendant, like the defendant in *Torres* (and unlike Defendants in this case), had declined to update the plaintiff's credit information in response to his written request. *Id*. The *Russell* court used the fact of the request to distinguish the case from other cases (including *Bruno* and *Irby*, *supra*) in which the defendant was only alleged to have failed to update the report, even citing the act of rebuffing the plaintiff's request as "a critical distinction" from *Bruno*. *Id*. at 741.

While Holland latches onto the language in *Russell* indicating failing to correct a credit report *may* constitute a violation of a discharge order, (*see* doc. 84 at 25), he provides nothing to show it actually does in this case.

The last case Holland discusses, *In re Norman*, No. 04-11682, 2006 WL 2818814 (Bankr. M.D. Ala. Sept. 29, 2006), appears at first blush to lend him more support. However, to the extent *Norman* bolsters Holland's arguments, it does so in ways that suggest it was a creature of the law of its time. In *Norman*, the plaintiff alleged only that the defendant reported his debt as "Charged off account"; this, the plaintiff said, was for the purpose of attempting to collect the debt.[12] *Id.* at *1. The defendant moved to dismiss. *Id.* In a brief, two-paragraph discussion of the credit-reporting issue containing virtually no analysis, the court concluded, "mindful of the posture in which this case presently sits," that it was required to accept as true the allegations in the complaint and concluded, pursuant to then-applicable law, "the [defendant], as the moving party, cannot show the Plaintiff cannot prevail **under any set of facts**." *Id.* (emphasis added). This is ultimately more a reflection of the pre-*Iqbal* and -*Twombly* motion to dismiss standard than a useful guide for this case. *See id.* (relying on the since-abrogated *Conley v. Gibson*, 355 U.S. 41 (1957)). In any event, the court tempered its conclusion by chiding the plaintiff for failing to use the remedy available to him under the FCRA for correcting his credit report before moving for contempt of the discharge injunction. *Id.* There is little of substance and current application to be taken from *Norman*, and none of it is persuasive.

Finally, in a footnote, Holland provides a string cite of numerous cases that allegedly support failure to update a credit report is coercive and violates the discharge injunction. (Doc. 84

---

[12] At least, that is all that is apparent from the court's recitation of the facts.

at 26 n.22). None of these actually back up that proposition. Some are Fair Credit Reporting Act cases. *See Venugopal v. Digital Fed. Credit Union*, 2013 WL 1283436 (N.D. Cal. Mar. 27, 2013); *Harold v. Experian Info. Solutions, Inc.*, 2012 WL 4097708 (N.D. Cal. Sept. 17, 2012); *Orr v. Allied Interstate, Inc.*, 2012 WL 4033721 (N.D.N.Y. Sept. 12, 2012). Showing a Fair Credit Reporting Act violation (assuming Holland did so here) would not show a violation of the discharge injunction. The remainder are, like *Torres* and *Russell*, cases in which the plaintiffs had disputed the inaccurate reporting. *See Carriere v. Proponent Federal Credit Union*, 2004 WL 1638250 (W.D. La. July 12, 2004); *In re Haynes, 2014 WL 3608891* (Bankr. S.D.N.Y. July 22, 2014); *In re Zine*, 521 B.R. 31 (Bankr. D. Mass. 2014); *In re Wynn*, 422 B.R. 763 (Bankr. N.D. Fla. 2010); *In re Winslow*, 391 B.R. 212 (Bankr. D. Me. 2008); *In re McKenzie-Gilyard*, 388 B.R. 474 (Bankr. E.D.N.Y. 2007). As discussed above, there is no allegation Holland disputed the inaccurate credit reporting.

At most, Holland has shown that credit reporting, linked to other activity that indicates the credit reporting is an attempt to collect a debt, can constitute contempt of a discharge injunction. That is not the factual scenario here, and the second amended complaint contains nothing to support that Defendants violated § 524 by failing to update Holland's credit report.

### d. Liens attached to subsequently-acquired property (Mitchell and Hooper)

Mitchell and Hooper allege Defendants violated the discharge injunction by encumbering real property they acquired after their discharges with judgment liens.[13] The specific language they use to describe this process is that each affected plaintiff "has acquired title to real property

---

[13] Both parties discuss this specific conduct only in the context of Mitchell, although there is no meaningful distinction between Plaintiffs' allegations as to both Mitchell and Hooper.

subsequent to his discharge to which this judgment has wrongfully attached and wrongfully encumbered." (Doc. 75 at ¶¶ 39 & 48). Notably, this passive construction does not identify any action Defendants took that resulted in the judgment attaching to the property; the judgment is simply alleged to have attached, of its own accord, to the property. This is in stark contrast to how the Caldwells frame their allegations, in which they identify a pre-discharge judgment which Defendants then "wrongfully revived . . . and later recorded" prior to attempting, improperly, to execute on the Caldwells' home. (*Id*. at ¶¶ 21, 24-25).

Although all reasonable inferences must be made in favor of Plaintiffs, there is nothing to support any action Defendants took as to Mitchell or Hooper. Instead, the only plausible reading of the second amended complaint is Mitchell and Hooper contend the uncorrected public records of judgments against them encumber their after-acquired property simply because they exist. This is simply the failure-to-correct allegation plus a consequence flowing from it, which is still not an allegation of any affirmative conduct by Defendants. And, as Defendants note, Plaintiffs are mistaken about this consequence; a judgment discharged in bankruptcy cannot attach to real property a debtor acquires post-petition. *In re Hamilton*, 286 B.R. 291, 293 (Bankr. D.N.J. 2002) (declining to enter a "comfort order" to protect hypothetical post-petition-acquired property for this reason). Consequently, Mitchell and Hooper have not alleged a violation of the discharge injunction.

### e. Allegations in combination

Plaintiffs argue their allegations should be assessed in combination, rather than in a vacuum. (Doc. 84 at 3). It is true the courts in many of the cases cited above are careful to note that the specific inaction at issue, standing alone, does not violate the discharge injunction, leaving open the possibility that it might violate the discharge injunction coupled to other activity. *See,*

*e.g., Mahoney*, 368 B.R. at 580; *Torres*, 367 B.R. at 486-87.  None of them, however, support that one form of inaction by a creditor can combine with other passivity to create an actionable violation, despite Plaintiffs' attempts to highlight each type of inaction in the context of the others. (*See, e.g.,* doc. 84 at 10-11 (failure-to-correct allegations combined with pattern-and-practice allegations), 18 (failure-to-correct allegations combined with inaction described as "affirmative acts"), 25-26 (credit reporting allegations combined with failure-to-correct allegations)).

The cases Plaintiffs quote for the principle that their allegations are to be assessed in combination, pointing to the overall effect of the alleged conduct, are illustrative.  In their parenthetical quotation of *Jones v. Citimortgage, Inc.,* 666 F. App'x 766, 774 (11th Cir. 2016), Plaintiffs emphasize the fact that the discharge injunction "prohibits any action **that has the effect of pressuring a debtor to repay a discharged debt, even if the means are indirect**," (doc. 89-1 at 3) (emphasis in original), when the real problem for them is the non-bolded portion: that the injunction "prohibits any <u>action</u>" that has such an effect.  Plaintiffs also quote the Eleventh Circuit's observation in *McLean II*, 794 F.3d at 1320, "that § 524(a)(2) is an expansive provision designed to prevent any action that has the effect of pressuring a debtor to repay a discharged debt, even if the means of pressuring the debtor are indirect."  (Doc. 89-1 at 3). The breadth of the actions the provision is designed to prevent is beside the point when Plaintiffs' allegations do not allege any actions taken by Defendants.

In a roundabout way, Plaintiffs acknowledge the futility of this approach.  In a footnote in their response, they attempt to distinguish the facts they have pleaded from *In re Mogg*, 2007 WL 2608501 (Bankr. S.D. Ill. 2007), in which the court found a creditor's passivity in failing to correct a credit report was not contempt of a discharge injunction notwithstanding the debtors requested it be corrected.  (Doc. 84 at 20 n.20).  Plaintiffs contend "the *Mogg* court limited its holding to the

specific facts of the case, concerning allegations by the debtor that the creditor was completely passive, taking no action." (*Id.*). This is exactly what Plaintiffs have done here, though. Plaintiffs identify multiple varieties of inaction, but they amount to complete passivity (notwithstanding that passivity may have had different effects on each of them). Thus, Plaintiffs have failed to demonstrate a violation of the discharge injunctions, and their claims are due to be dismissed.

### 2. Locklin

Unlike the other New Plaintiffs, Locklin points to affirmative acts taken by Defendants: specifically, reviving and recording a prepetition judgment lien and contacting her by letter with a demand for payment. Defendants' primary contention is that they were entitled to revive and record the prepetition judgment lien because it was not avoided in bankruptcy, and entitled to send the letter to enforce their rights *in rem* with respect to the security interest they retained. (Doc. 78 at 11).

In support of their arguments, Defendants have attached the order of the bankruptcy court expressly stating the judgment lien "is avoided . . . to the extent said lien impairs exemptions to which the debtor would otherwise be entitled. It is hereby determined that the debtor has non-exempt equity of $5700.00 in her homestead property . . . and, therefore, the judgment lien of Redstone Federal Credit Union is not avoided to that extent. Redstone Federal Credit Union shall retain a judgment lien of $5700.00 against the interest of the debtor in said property."[14] (Doc. 78-

_____

[14] Ordinarily, a court may not consider materials outside the complaint, such as an attached document, in addressing a motion to dismiss without converting it to a motion for summary judgment. FED. R. CIV. P. 12(d). However, a court may properly consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" without converting the motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Because "[a] court may take judicial notice of its own records and the records

1).  Defendants have also provided a copy of the letter sent to Locklin on April 5, 2015, which

states:

> As you know, our office represents Redstone Federal Credit Union with regard to
> a judgment entered against you June 17, 2005, in the original amount of $7,765.27
> plus court costs.  The payoff on this judgment, as of May 27, 2015, is $20,964.15.
> Although the debt itself was discharged in your bankruptcy, the judgment lien,
> according to our records, was not avoided, and survived the bankruptcy discharge,
> to the extent of $7,000.00 plus any post-petition appreciation in the value of your
> real property.
>
> Unless immediate arrangements are made to clear this lien in full, we will have no
> choice but to foreclose the judgment lien by execution on the subject pre-petition
> real estate.  I am calendaring ahead forty-five (45) days in anticipation of hearing
> from you.
>
> Unless you notify us within 30 days after the receipt of this letter that the validity
> of this lien, or any portion of it, is disputed, we will assume that the lien is valid.  If
> you do notify us in writing of a dispute, we will obtain verification of the lien and
> mail it to you.  Also, upon your written request within 30 days, we will provide you
> with the name and address of the original creditor if different from the current
> creditor.  This letter is an attempt to collect the judgment, and any information
> obtained will be used for that purpose.

(Doc. 78-2).  Along with the letter, Grisham enclosed two additional documents, which Plaintiffs

have attached to their response, (*see* doc. 84 at 16).  First, Grisham provided an itemization of

payments made by Locklin, along with the number of days interest accrued as of each payment

date, the total amount of accrued interest between payments, and the balance.  (Doc. 84-1 at 4).

The first ten payments cover January 2006 to October 2006.  (*Id.*).  The final payment amount is

---

of inferior courts," *United States v. Rey*, 811 F.2d 1453, 1457 (11th Cir. 1987), considering the
order of the bankruptcy court in resolving the motion to dismiss does not require conversion to
summary judgment.  Nor does considering the collection letter from Grisham to Locklin (discussed
further below), (doc. 78-2), which is incorporated by reference into the complaint, (*see* doc. 75 at
¶ 30), and is central to Locklin's claims.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)
(noting "a document need not be physically attached to a pleading to be incorporated by reference
into it," and such a document may be considered if it is central to the plaintiff's claim).

dated May 27, 2015, in the amount of $0.00, with $12,066.59 in accrued interest over the 3,151 days since the last payment, bringing the balance to $20,670.00.  (*Id*.).  The second enclosure is an assessment of Locklin's property.  (*Id*. at 5).

"[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."  *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).  Since *in rem* liability remains after a discharge of *in personam* liability in bankruptcy, "liens on property remain enforceable after discharge unless avoidable under the Bankruptcy Code."  *In re Holloway*, 81 F.3d 1062, 1063 n.1 (11th Cir. 1996).  Because "[o]rdinarily, valid prepetition liens pass through bankruptcy unaffected . . . a creditor may exercise valid lien rights postdischarge without violating the discharge injunction."  *In re Botson*, 531 B.R. 719, 725 (Bankr. N.D. Ohio 2015).

In the course of exercising those lien rights, a creditor may communicate with a debtor, as "[t]he discharge injunction does not prohibit every communication between a creditor and debtor—only those designed to collect, recover or offset any such debt as a personal liability of the debtor."  *In re Henriquez*, 536 B.R. 341, 345 (Bankr. N.D. Ga. 2015) (quoting *In re Gill*, 529 B.R. 31, 37 (Bankr.W.D.N.Y.2015)).  A lender has the right to enforce a mortgage against the property after the discharge in bankruptcy, but "it has no right to demand payment from the Debtor on the discharged debt."  *In re Mele*, 486 B.R. 546, 555 (Bankr. N.D. Ga. 2013) (quoting *In re Brown*, 481 B.R. 351, 358 (Bankr. W.D. Pa. 2012)).  Because the line between permissible and impermissible communications is often fine, determining whether a particular post-discharge communication violates the discharge injunction is a "particularly fact-intensive inquiry."  *Id.* at 556.

Examining the letter first, Defendants argue Locklin has mischaracterized it in her complaint when she states it "demand[ed] payment of the debt," (doc. 75 at ¶ 30). (Doc. 78 at 13). They point to the letter's acknowledgment that the debt has been discharged in bankruptcy and the absence of any language stating Locklin is personally liable for the debt. (*Id*.). Plaintiffs respond that the letter explicitly states it is "an attempt to collect the judgment," is coercive, and contains misstatements as to the amount of the debt and whether Defendants are entitled to post-petition appreciation in the value of the property. (Doc. 84 at 15-16).

Construing the facts favorably to Locklin, her characterization of the letter is not inaccurate or in conflict with the text of the letter. The letter states Defendants "will have no choice but to foreclose the judgment lien" unless "immediate arrangements are made to clear this lien in full." It further states, explicitly, that it "is an attempt to collect the judgment"—not simply to clear the lien. Although not necessarily a demand for payment of <u>discharged</u> debt, there is little doubt the letter can be construed as a demand for payment of <u>something</u>.

Defendants contend even if the letter was a demand for payment, it would not violate the discharge injunction because it was still not an attempt to collect the payment as a personal liability of Locklin, but rather an attempt *in rem* to enforce the security interest. (Doc. 78 at 13-14). They point to several cases they say support the permissibility of this type of communication (i.e., a foreclosure attempt coupled with a demand for payment to satisfy the lien in lieu of foreclosure). Defendants do not go into any real detail about the types of communications in the cases they cite, but none of them resemble the letter in this case. Defendants first rely on *In re Cusato*, 485 B.R. 824 (Bankr. E.D. Pa. 2013), but that case involved a creditor foreclosing on property, then sending a payoff letter to the debtor's title agent after the agent requested it in connection with a reverse mortgage loan closing. In *Botson*, the debtors contacted their creditor, seeking a release of a UCC-

1 filing, and were told the filing would "only be withdrawn after Plaintiff surrendered the full amount [it] demanded[.]" 531 B.R. at 722. In other words, in both cases, the creditor's demand for payment came in response to an inquiry by the debtor or the debtor's agent, rather than (as in this case) the creditor's affirmative effort to contact the debtor seeking payment to discharge the lien. And the creditor in *In re Gomez*, No. 03-13147 BKT, 2014 WL 5454227 (Bankr. D.P.R. Oct. 24, 2014), did not communicate at all with the debtor; instead, it simply filed a state court collection and foreclosure action. *Id*. at *1.

The bigger problem for Defendants is that the letter's content is consistent with Locklin's claims it contained false or misleading information about the amount of the lien.[15] Specifically, the letter states the lien survived in the amount of $7,000.00, over a thousand dollars more than the actual amount of the surviving lien. This facially supports that Defendants were attempting to collect not just the amount required to clear the lien, but an amount that also includes at least some of Locklin's discharged personal debt. Defendants concede this overstatement, but characterize it as a harmless mistake. (Doc. 87 at 14). That alternative explanation is untenable to support a

---

[15] Locklin also contends the letter falsely asserts Defendants are entitled to post-petition appreciation on her property. However, the cases she cites in support of the proposition a lien does not attach to post-appreciation interest in property relate to liens avoided in their entirety. *See In re Marshall*, 204 B.R. 838, 40 (noting the creditor no longer has a secured claim, as its lien was avoided); *In re Butler*, 196 B.R. 329, 330 (Bankr. W.D. Va. 1996) ("This Court holds, for reasons hereinafter stated, that the lien is entirely avoidable pursuant to 11 U.S.C. § 522(f) and that any future increase in value accrues to the benefit of the Debtor as after-acquired property."). Locklin does not challenge that the lien on her property was <u>not</u> avoided in its entirety. Thus, the lien is still subject to the general rule that '[a]ny increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor," *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992), and Grisham's letter did not misstate the law applicable to the lien at issue.

motion to dismiss. Additionally, Defendants offer no explanation for the attachments setting out the interest accrued on the judgment and the appreciation in value of Locklin's property beyond that they are "perfectly consistent with a communication explaining lien enforcement rights." (Doc. 87 at 14). While that may be true, they are also consistent with a communication attempting to collect the total amount of the judgment plus the accrued interest (or, in any event, more than the amount of the surviving lien), notwithstanding Grisham's observation in the letter that the debt, as Locklin's personal liability, had been discharged in bankruptcy.

Defendants also offer a false choice when they state the letter cannot be an *in personam* attempt to collect the underlying discharged debt because it is an *in rem* attempt to enforce a security interest. In *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012), the Eleventh Circuit rejected an analogous proposition (albeit in the context of an FDCPA action). The defendant law firm in that case sent debtor plaintiffs a letter on behalf of a creditor, informing the plaintiffs that it intended to foreclose on their property and demanding "full and immediate payment of all amounts due and owing" under their mortgage note. *Id.* at 1214. The letter and its attachments stated, in various forms, that the law firm "is attempting to collect a debt." *Id.* Over the defendants' arguments that the letter and attachments were an attempt to inform the plaintiffs that the creditor intended to enforce its security interest through foreclosure, the Eleventh Circuit held:

> That argument wrongly assumes that a communication cannot have dual purposes. Even if the Ellis law firm intended the letter and documents to give the Reeses notice of the foreclosure, they also could have—and did—demand payment on the underlying debt. . . . The fact that the letter and documents relate to the enforcement of a security interest does not prevent them from also relating to the collection of a debt . . . A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest.

*Id*. at 1217. While the standards applicable to FDCPA claims and § 524 violations are distinct (as noted *supra*, n.10), the general principle that a communication may have more than one purpose applies with equal force in both contexts. Consequently, it makes sense that whether or not Grisham's letter relates to *in rem* enforcement of a security interest, it does not follow that it relates only to *in rem* enforcement of its security interest.

Because Locklin has sufficiently alleged a violation of § 524 based on Grisham's letter, it is unnecessary to examine whether reviving the judgment represents a freestanding violation of the discharge injunction. While it might have been permissible as a general matter for Defendants to revive the judgment, the letter sufficiently ties the revival to an attempt to collect discharged debt such that, considered in combination, both may violate the discharge injunction. *See In re Paul*, 534 F.3d 1303, 1313 (10th Cir. 2008) ("[C]onduct that facially appears permissible may still violate § 524(a)(2) . . . if it really serves to pressure the debtor to pay a discharged debt."); *Mahoney*, 368 B.R. at 584 (observing an otherwise permissible act may be impermissible when there is "linkage between the act . . . and the collection or recovery of the discharged debt."). Therefore, Locklin's Count I claims proceed.

## C. Count II — FDCPA

A plaintiff asserting an FDCPA claim must show "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1294 (N.D. Ala. 2013) (quoting *Janke v. Wells Fargo and Co.,* 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011)). Grisham contends the second amended complaint lacks factual allegations to support the second element as to all New Plaintiffs but Locklin and the third element as to all New Plaintiffs.

### 1. New Plaintiffs other than Locklin[16]

Although nominally a challenge to whether or not Plaintiffs have sufficiently alleged Grisham is a "debt collector," Grisham's first argument fits more closely into whether it has engaged in "collection activity" as to Plaintiffs. Grisham cites *McCready v. eBay, Inc.*, 453 F.3d 882, 888-89 (7th Cir. 2006), for the proposition that to satisfy the statutory definition of "debt collector," it was required to engage in affirmative debt-collection conduct. (Doc. 79 at 5). In *McCready*, the Seventh Circuit briefly discussed whether the defendant could be considered a "debt collector" under the FDCPA. 453 F.3d at 888-89. In doing so, it declined to find the defendant satisfied either prong of § 1692a(6), but instead focused on whether the defendant had engaged "in some affirmative conduct with regard to collecting a debt" that would bring it within the statutory prohibitions. *Id.* The apparent effect of this is to collapse the first and second FDCPA elements under Eleventh Circuit law into a single inquiry: examining whether an entity is a "debt collector" in the context of whether it subjected the debtor to "collection activity." Therefore, the undersigned will examine Grisham's claim it is not a debt collector by way of examining whether it engaged in collection activity against Plaintiffs.

Plaintiffs do not specifically identify, for each of them, what Grisham is alleged to have done in violation of the FDCPA. Instead, they state as a blanket proposition the second amended complaint "specifically alleges acts taken by Defendant, such as executions, revivals of judgments, dunning debtors with correspondence, and failing to satisfy the discharged judgments." (Doc. 84). They point to Paragraphs 25, 29, 30, and 34 of their complaint to support this. Paragraph 25 is

---

[16] As with Section III.B.1, the use of "Plaintiffs" in this section refers only to New Plaintiffs other than Locklin.

specific to the Caldwells, who are not the subject of the motion to dismiss and whose claims are irrelevant here. Paragraphs 29 and 30 are specific to Locklin, referencing the revival and recording of the judgment against her and the letter Grisham sent to her, and are discussed below. Paragraph 34 relates to Plaintiff Bart Reeves, and alleges "Defendants have not satisfied said judgment nor have they filed any appropriate pleadings with the Circuit Court of Madison County showing that the debt has been discharged in bankruptcy. Further, Defendants have failed to file any satisfaction or other pleadings in the Morgan County Probate Court (or any other probate court where said judgment was previously recorded) to reflect that said debt was discharged in bankruptcy." (Doc. 75 at ¶ 34). As discussed above in the context of the discharge injunction, the complaint alleges this same conduct as to all Plaintiffs. (*See id.* at ¶¶ 38, 43, 47 & 52).

Even assuming Grisham could be held responsible under the FDCPA for Redstone's failure to correct public records of judgments owed to it (which Plaintiffs do not attempt to support), Plaintiffs have not alleged facts sufficient to state claims under the FDCPA. In order for a debtor to be "the object of collection activity," courts look to whether a creditor's communications with the debtor were connected to an attempt to collect a debt. *See Reese*, 678 F.3d at 1211. Plaintiffs do not allege Grisham ever communicated with any of them at all. The second amended complaint also does not tie Grisham's failure to satisfy and/or correct judgments to an attempt to collect the debt through non-communication-based means. Instead, they appear to rely on conclusory allegations in their complaint that Grisham engaged in "collection efforts," (doc. 75 at ¶ 70), and violated one or more provisions of the FDCPA, (*see id*. at ¶ 71). These are bare legal conclusions, divorced from factual support, and not sufficient to withstand a motion to dismiss. *See Iqbal*, 556 U.S. at 678

A review of the FDCPA provisions Plaintiffs allege in their response Grisham violated is instructive. Plaintiffs contend Grisham's acts are, as a general matter, false, deceptive, and misleading methods used to collect debts that are not legally enforceable and thus violate 15 U.S.C. §§ 1692c, 1692d, 1692e, and 1692f (specifically, 1692 f(1)). (Doc. 84 at 30). Again, they do not identify which act as to which plaintiff violates which section. Section 1692c relates to communications in connection with debt collection, which are not alleged as to any Plaintiff. Section 1692d covers harassment and abuse, and enumerates six categories of prohibited conduct (such as use or threat of violence and use of obscene or profane language), none of which is alleged here. The provision is not limited to these enumerated types of conduct, but Plaintiffs also do not allege any other conduct "manifest[ing] 'a tone of intimidation'" such that it would fall under the provision's scope. *See Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1305 (11th Cir. 2015) (citing *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985)). Section 1692e prohibits the use of "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." Plaintiffs allege no representations at all made by Grisham to anyone, and to the extent they argue failing to correct public records is a prohibited "false, deceptive, or misleading . . . means," they have not alleged facts to support it was made "in connection with the collection of any debt."[17] Similarly, 1692f is a broad, catch-all prohibition, *see Miljkovic,* 791 F.3d at 1308, on the use of "unfair or unconscionable means to collect or attempt to collect any

---

[17] In their supplemental brief, Plaintiffs argue *Ellswick, supra,* supports they have sufficiently alleged a violation of § 1692e, because it is a question of fact whether the public records are false, misleading, or deceptive without correction by Grisham. (Doc. 95 at 5). Again, their focus is on the wrong aspect of the analysis. It is unnecessary to explore the falsity, deceptiveness, or misleading character of the public records when Plaintiffs have not connected the records to collection activity.

debt," and its subsection (1) specifically prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." But nothing in the second amended complaint joins the "means" of failing to correct the judgments with a collection effort.

Without a factual allegation of collection activity by Grisham, Plaintiffs' FDCPA claims are due to be dismissed.

### 2. Locklin

Locklin points to the same conduct to support the FDCPA violations as she does violations of the discharge injunction: the 2015 revival of the judgment and Grisham's letter.

### a. Revival of judgment

As discussed above, "liens on property remain enforceable after discharge unless avoidable under the Bankruptcy Code." *In re Holloway*, 81 F.3d 1062, 1063 n.1 (11th Cir. 1996). Although it is somewhat unclear from her complaint and her arguments, Locklin's contention the revival of the judgment violated the FDCPA appears to be premised on the theory the discharge voided the judgment, and therefore the revival was an attempt to collect a debt not permitted by law in violation of 15 U.S.C. § 1692f(1). This is how Grisham analyzes the issue, at any rate (and how Locklin responds), contending the judgment's revival was lawful and therefore not a violation of § 1692f(1).

Locklin first turns to Alabama state law, pointing to Ala. Code § 6-9-191 to support that discharged debt cannot be revived under state law. That provision states, in its entirety: "If 10 years have elapsed from the entry of the judgment without issue of execution or if 10 years have elapsed since the date of the last execution issued, the judgment must be presumed satisfied, and the burden of proving it not satisfied is upon the plaintiff." ALA. CODE § 6-9-191. In other words,

the provision creates a presumption a 10-year-old judgment is satisfied, rebuttable by a creditor seeking to revive the judgment. This is an evidentiary matter that does not directly speak to the validity of the debt. *See Cunningham v. Glenn*, No. 2:02-MC-03127-ID, 2011 WL 738870, at *2-3 (M.D. Ala. Feb. 24, 2011) (discussing the evidentiary showing required to overcome the presumption); *Hardy v. Johnson*, No. 2160115, 2017 WL 3574376, at *3 (Ala. Civ. App. Aug. 18, 2017) (finding evidence rebutted presumption); *Hines v. Cunningham*, 622 So. 2d 395, 397 (Ala. Civ. App. 1993) (same). *See also PACCAR Fin. Corp. v. Robbins Grp. Int'l, Inc.*, No. 3:97-CV-1751-SLB, 2012 WL 5426456, at *2 (N.D. Ala. Nov. 1, 2012) (discussing both § 6-9-191 and § 6-9-190, which provides a twenty-year limitation period for reviving a judgment). Locklin appears to be arguing Redstone could not, as a matter of law, have met the burden to overcome the presumption due to the debt's discharge in bankruptcy, but this is essentially an attack on the state proceeding in which the judgment was revived and a request that the revival of the judgment be declared invalid. This Court has no jurisdiction to review that claim. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005) (district courts lack jurisdiction under the *Rooker-Feldman* doctrine to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

Locklin's next argument, which is somewhat linked to her first, is that the judgment could not have been revived since 11 U.S.C. § 524(a)(1) voided it as a matter of law and, because Alabama law prohibits a void judgment from being revived, the revived judgment is also void (and therefore was wrongly revived). (Doc. 84 at 12). Section 524(a)(1) states a discharge in bankruptcy "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under

35

section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived." *Id*. Locklin focuses on the wrong portion of this provision, because it supports that the judgment against Locklin was only void "to the extent that [it is] a determination of [her] personal liability," not that it was void in all respects. This is consistent with the bankruptcy court's order—which neither Plaintiffs' response nor sur-reply attempt to explain—expressly providing that the judgment lien <u>was not</u> avoided in its entirety; instead, Redstone's $5,700 judgment lien survived, representing its security interest in the property.

Finally, Locklin again points to *Ellswick* to support her claims. Specifically, Locklin alleges *Ellswick* supports "a void debt has no legal effect," which means a "lien . . . will be . . . void and no longer of any legal force or effect." (Doc. 95 at 6) (quoting *Ellswick*, 2018 WL 1408536 at *7). The underlying debt in *Ellswick* was void *ab initio* because it violated state law; no portion of it survived to support a lien. 2018 WL 1408536 at *7. Conversely, Locklin has not shown the judgment in this case was entirely voided by the discharge in bankruptcy, so *Ellswick's* discussion of void debt does not help her.

With no basis to conclude the revival of the judgment was wrongful, and thus that it was an attempt by Grisham to collect a debt it was not permitted to collect, Locklin cannot rely on the judgment's revival as a violation of § 1692f(1). Therefore, to the extent she does, her FDCPA claim is due to be dismissed.

### b. Letter to Locklin

Grisham does not specifically discuss the letter, but argues as a general matter Locklin has not alleged facts indicating it violated the FDCPA. However, for essentially the same reasons she has alleged the letter violated the discharge injunction, she has adequately stated an FDCPA claim: Locklin alleges Grisham's letter was an attempt to collect debt she discharged in bankruptcy, and

36

Grisham's letter demands "immediate arrangements" to clear the lien in full, in a misstated amount in excess of the actual amount of the surviving lien. *See supra*, section III.B.2. At a minimum, this is sufficient to state a violation of § 1692f(1); a discharged debt is necessarily not one Grisham was permitted by law to collect. Therefore, Grisham's motion to dismiss is due to be denied as to Lockin's claims alleging Grisham's letter violated the FDCPA.

## IV. Conclusion

For the reasons stated above, the motions to dismiss, (docs. 76 & 79), are **GRANTED** to the extent that the claims of Plaintiffs Bart Reeves, Davis A. Mitchell, Jeremy D. Holland, Jessalyn Hooper, and Lorondo Brazelton are **DISMISSED**. The motions are also **GRANTED** to the extent Plaintiff Jane B. Locklin's FDCPA claims based on Defendants' 2015 revival of the judgment against her are **DISMISSED**. The motions are **DENIED** in all other respects. Defendants are **DIRECTED** to answer the second amended complaint by **August 3, 2018**.

DONE this 20th day of July, 2018.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE